IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Nathan Howard, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:19-cv-222 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Southern Ohio Pizza, Inc.; Louis Metro; and Karen Metro, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Nathan Howard, on behalf of himself and similarly-situated individuals, brings this action against Defendants Southern Ohio Pizza, Inc., Louis Metro, and Karen Metro ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Wage Fairness Act ("OMFWSA"), O.R.C. 4111.01, *et seq.*, O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

2.      Defendants operate approximately 20 Domino's Pizza franchises in Ohio and Indiana (the "Southern Ohio Domino's" stores or restaurants).

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     All delivery drivers at the Wright Bros. stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for work-related expenses.

5.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.     Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Ohio from February 8, 2018 through the date of final judgment in this action, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the OMFWSA, the Prompt Pay Act, and O.R.C. § 2307.60.

## Jurisdiction and Venue

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**Parties**

**Plaintiff**

**Nathan Howard**

10.    Plaintiff Nathan Howard is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Southern District of Ohio.

11.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, Section 34a, the OMFWSA, and the Ohio Prompt Pay Act.

12.    Plaintiff has given written consent to join this action.

**Defendants**

**Southern Ohio Pizza, Inc.**

13.    Defendant Southern Ohio Pizza, Inc. is a domestic corporation authorized to do business under the laws of Ohio.

14.    Southern Ohio Pizza, Inc. is the corporate entity that appears on Plaintiff's paystubs for the work he completed for Defendants.

15.    Southern Ohio Pizza, Inc. was founded by Louis and Karen Metro.

16.    Southern Ohio Pizza, Inc. is headquartered in Ohio.

17.    Southern Ohio Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18.    Southern Ohio Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

3

19.     At all relevant times, Southern Ohio Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

20.     Southern Ohio Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

21.     At all relevant times, Southern Ohio Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

22.     Southern Ohio Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Louis Metro**

23.     Defendant Louis Metro is one of two owners of Southern Ohio Pizza, Inc., along with his wife Karen.

24.     Louis Metro is the president and founder of Southern Ohio Pizza, Inc.

25.     Louis Metro is individually liable to the Southern Ohio Domino's delivery drivers under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Southern Ohio Domino's stores, serves as a manager and/or member of Southern Ohio Pizza, Inc., ultimately controls significant aspects of the Southern Ohio Domino's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

26.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had financial control over the operations at each of the Southern Ohio Domino's stores.

27.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has a role in significant aspects of the Southern Ohio Domino's stores' day to day operations.

28.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had control over the Southern Ohio Domino's stores' pay policies.

29.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had power over personnel and payroll decisions at the Southern Ohio Domino's stores, including but not limited to influence of delivery driver pay.

30.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to hire, fire and discipline employees, including delivery drivers at the Southern Ohio Domino's stores.

31.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to stop any illegal pay practices that harmed delivery drivers at the Southern Ohio Domino's stores.

32.     At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to transfer the assets and liabilities of Southern Ohio Pizza, Inc.

33. At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to declare bankruptcy on behalf of Southern Ohio Pizza, Inc.

34. At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to enter into contracts on behalf of each of the Southern Ohio Domino's stores.

35. At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro has had the power to close, shut down, and/or sell each of the Southern Ohio Domino's stores.

36. At all relevant times, by virtue of his role as owner and operator of Southern Ohio Pizza, Inc., Louis Metro had authority over the overall direction of each of Southern Ohio Domino's stores and was ultimately responsible for their operations.

37. The Southern Ohio Domino's stores function for Louis Metro's profit.

38. Louis Metro has influence over how the Southern Ohio Domino's stores can delivery run more profitably and efficiently.

**Karen Metro**

39. Defendant Karen Metro is one of two owners of Southern Ohio Pizza, Inc., along with her husband Louis.

40. Karen Metro is the vice president and founder of Southern Ohio Pizza, Inc.

41. Karen Metro is individually liable to the Southern Ohio Domino's delivery drivers under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because she owns and operates the Southern Ohio Domino's stores, serves as a manager and/or member

of Southern Ohio Pizza, Inc., ultimately controls significant aspects of the Southern Ohio Domino's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

42.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had financial control over the operations at each of the Southern Ohio Domino's stores.

43.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has a role in significant aspects of the Southern Ohio Domino's stores' day to day operations.

44.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had control over the Southern Ohio Domino's stores' pay policies.

45.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had power over personnel and payroll decisions at the Southern Ohio Domino's stores, including but not limited to influence of delivery driver pay.

46.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to hire, fire and discipline employees, including delivery drivers at the Southern Ohio Domino's stores.

47.     At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to stop any illegal pay practices that harmed delivery drivers at the Southern Ohio Domino's stores.

48. At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to transfer the assets and liabilities of Southern Ohio Pizza, Inc.

49. At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to declare bankruptcy on behalf of Southern Ohio Pizza, Inc.

50. At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to enter into contracts on behalf of each of the Southern Ohio Domino's stores.

51. At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro has had the power to close, shut down, and/or sell each of the Southern Ohio Domino's stores.

52. At all relevant times, by virtue of her role as owner and vice president of Southern Ohio Pizza, Inc., Karen Metro had authority over the overall direction of each of Southern Ohio Domino's stores and was ultimately responsible for their operations.

53. The Southern Ohio Domino's stores function for Karen Metro's profit.

54. Karen Metro has influence over how the Southern Ohio Domino's stores can delivery run more profitably and efficiently.

## FACTS

### Class-wide Factual Allegations

55. During all relevant times, Defendants have operated the Southern Ohio Domino's stores.

56.    Defendants recently settled a class and collective action involving 173 delivery drivers who worked from June 23, 2014 to February 7, 2018, asserting claims nearly identical to those asserted here. *See Mullins v. Southern Ohio Pizza, Inc., et al.*, No. 1:17-cv-426, Doc. 39 (S.D. Ohio Jan. 18, 2019).

57.    Some or all of the Southern Ohio Domino's stores employs delivery drivers.

58.    Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Southern Ohio Domino's stores.

59.    All delivery drivers employed at the Southern Ohio Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

60.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Southern Ohio Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

61.    At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

62.    Until approximately May 2017, Defendants paid their delivery drivers minimum wage minus a tip credit for hours worked inside the restaurant in a non-tipped capacity.

63.    Since approximately May 2017, Defendants have paid their delivery drivers minimum wage or slightly above minimum wage for all hours worked inside the restaurant in a non-tipped capacity.

64.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

9

65.     The Southern Ohio Domino's delivery drivers work "dual jobs."

66.     Until approximately May 2017, Defendants did not properly inform delivery drivers of the requirements for taking a tip credit from their wages under the FLSA.

67.     Until approximately May 2017, Defendants did not properly inform delivery drivers of the amount of the cash wage that they would be paid by them.

68.     Until approximately May 2017, Defendants not properly inform delivery drivers of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

69.     Until approximately May 2017, Defendants did not properly inform delivery drivers that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

70.     Until approximately May 2017, Defendants did not properly inform delivery drivers that the tip credit shall not apply to any employee who has not been informed of the requirements in 29 C.F.R. § 531.59(b).

71.     Defendants also failed to properly claim a tip credit from the wages paid to delivery drivers because, after accounting for unreimbursed expenses, Defendants did not actually pay the payrate they promised to pay.

72.     Since approximately May 2017, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

10

73.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

74.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, registration and licensing charges, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

75.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, registration and licensing costs, and incur cell phone and data charges all for the primary benefit of Defendants.

76.     Some of the Southern Ohio Domino's stores do not track or record their delivery drivers' actual expenses.

77.     None of the Southern Ohio Domino's stores track or record their delivery drivers' actual expenses.

78.     Some of the Southern Ohio Domino's stores do not reimburse delivery drivers for their actual expenses.

79.     None of the Southern Ohio Domino's stores reimburse delivery drivers for their actual expenses.

80.     Some of the Southern Ohio Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

11

81.     None of the Southern Ohio Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

82.     Throughout the relevant time period, Plaintiff and similarly situated delivery drivers receive a per-delivery reimbursement payment that amounts to less than the IRS standard business mileage rate for each mile they drive while completing deliveries for the Southern Ohio Domino's stores.

83.     For example, Plaintiff receives $1.20 per delivery.

84.     Plaintiff and similarly situated delivery drivers typically averaged approximately 6 miles per round-trip delivery or more.

85.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.     2016: 54 cents/mile
    b.     2017: 53.5 cents/mile
    c.     2018: 54.5 cents/mile
    d.     2019: 58 cents/mile

86.     The delivery drivers at Southern Ohio Domino's have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

87.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

88.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Southern Ohio Domino's stores.

12

89.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a tipped wage rate before deducting unreimbursed vehicle costs.

90.     Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

91.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

92.     Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Southern Ohio Domino's stores.

### Plaintiff's Individual Factual Allegations

93.     Plaintiff has worked at Southern Ohio Domino's for approximately 5 years in Monroe, Ohio.

94.     Until approximately May 2017, Plaintiff was paid minimum wage minus a tip credit for all hours worked, including hours worked inside the restaurant in a non-tipped capacity.

95.     Plaintiff's inside job duties were not related to his delivery job duties.

13

96.     Until approximately May 2017, Defendants did not properly inform Plaintiff of the requirements for taking a tip credit from his wages under the FLSA.

97.     Defendants did not pay Plaintiff at the tip credit wage rate they promised him, after accounting for unreimbursed expenses.

98.     At all relevant times, Plaintiff has been reimbursed on a per delivery basis. Specifically, Plaintiff is currently reimbursed $1.20 per delivery.

99.     Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

100.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, registration and licensing costs, and other equipment necessary for delivery drivers to complete their job duties.

101.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

102.    Defendants did not track the actual expenses incurred by Plaintiff.

103.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

104.    Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

14

105.    Plaintiff regularly makes approximately 2 to 4 deliveries per hour during the hours he works as a delivery driver.

106.    Plaintiff regularly drives approximately 6 miles per delivery.

107.    In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, using the IRS rate, Defendants under-reimbursed Plaintiff by $.38 per mile. Considering Plaintiff's estimate of about 6 average miles per delivery, Defendants under-reimbursed him about $2.28 per delivery ($.38 x 6 average miles), and $6.84 for the hour.

108.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

109.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Southern Ohio Domino's restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective"). The FLSA Collective excludes any claims that were released by individuals through the settlement reached in *Mullins v. Southern Ohio Pizza, Inc., et al.*

110.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and

failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

111.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

112.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

113.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

114.    The First Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

115.    The FLSA Collective members are readily identifiable and ascertainable.

116.    The FLSA Collective does not include any FLSA claims already released as a result of the settlement reached in *Mullins v. Southern Ohio Pizza, Inc., et al.*, No. 1:17-cv-426, Doc. 39 (S.D. Ohio Jan. 18, 2019). Specifically, the individuals who signed release forms in *Mullins* have already released their FLSA claims from the beginning of the relevant time period until February 7, 2018.

117.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

118.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Southern Ohio Domino's stores in the State of Ohio between February 8, 2018 and the date of final judgment in this matter ("Rule 23 Class").

16

119.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

120.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

121.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

122.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

123.    Notice can be provided by means permissible under Rule 23.

124.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

125.    There are more than 50 Rule 23 Class members.

126.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

127.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, the OMFWSA, and O.R.C. § 4113.15.

128.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

129.     By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

130.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

131.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

132.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

133.     Upon information and belief, Defendants and other employers throughout the state violate Section 34a, the OMFWSA, and O.R.C. § 4113.15.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the

complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

134.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

135.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

b.  Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.  Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g.  Whether Plaintiff and the Rule 23 Class completed non-tipped job duties for which they were paid a tipped wage rate;

h.  Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

136. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

137. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

138. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

139. Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

140. Defendants failed to properly inform Plaintiff and the FLSA Collective of the tip credit requirements of the FLSA.

141. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

142. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

20

143.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

144.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

145.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

146.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

147.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

148.    Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

149.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

150.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

151.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two

21

times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

### Count 3
### Untimely Payment of Wages – O.R.C. § 4113.15
### (On Behalf of Plaintiff and the Rule 23 Class)

152.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

153.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

154.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

155.    By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

156.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

157.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

158.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

### Count 4
### Damages Pursuant to O.R.C. § 2307.60

**(On Behalf of Plaintiff and the Rule 23 Class)**

159.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

160.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

161.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

162.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

163.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Nathan Howard prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

F. An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G. An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H. Liquidated damages under O.R.C. § 4113.15.

I. Compensatory and punitive damages under O.R.C. § 2307.60.

J. An award of prejudgment and post-judgment interest.

K. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Biller & Kimble, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)

Philip J. Krzeski (0095713)
Biller & Kimble, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
            www.billerkimble.com

*Counsel for Plaintiff and the putative class and collective*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble