IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Nathan Howard, *et al.*, | |
| *On Behalf Of Himself And Those Similarly Situated*, | Case No. 1:19-cv-222 |
| Plaintiff, | Judge Timothy S. Black |
| v. | Magistrate Judge Karen L. Litkovitz |
| Southern Ohio Pizza, Inc., *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiff asks that the Court preliminarily approve the parties' Settlement Agreement, attached as Exhibit 1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

The parties request that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Approve the content, form, and distribution of the class notice and claim form;

(3) Preliminarily approve the service award for Plaintiff;

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs;

(5) Schedule a formal fairness hearing approximately 160 days after preliminary approval.

Respectfully submitted,

*/s/ Andrew Biller*

Andrew R. Biller (0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

---

Memorandum in Support of Plaintiff's Unopposed Motion to
Preliminarily Approve Settlement

---

1. **Introduction**

The parties have reached a settlement that would resolve all of the claims raised in this lawsuit. Plaintiff now asks the Court to begin the process of finalizing the proposed Settlement Agreement, attached as Exhibit 1.

2. **Standard for Settlement Approval**

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At this, the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and an Ohio law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 3. Background of the Lawsuit and Claims

Plaintiff Nathan Howard delivered pizzas for Defendants' Domino's franchise, Southern Ohio Pizza, Inc. On March 26, 2019, he filed this lawsuit on behalf of himself and similarly situated drivers. Plaintiff's Complaint alleges several wage and hour violations.

First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in having to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum wages under the FLSA and Ohio law.

Second, Plaintiff contends that he worked "dual jobs"—one tipped and one non-tipped—which entitled him to be paid full minimum wage for non-tipped work.

Third, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

### 4. The *Mullins* Settlement

This is not the first time these defendants have been sued for these claims. At the beginning of 2019, Defendants settled the same types of claims for $1,070,000 plus $355,000 in fees and expenses. *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *7 (S.D. Ohio Jan. 18, 2019) (granting final settlement approval). *Mullins* was brought by the same plaintiff's counsel and defended by the same defense counsel as this case.

4

Because of the FLSA's unique "opt-in" structure, only those class members who affirmatively joined *Mullins* resolved their alleged FLSA claims. Thus, to the extent that either (1) an employee did not join *Mullins* or (2) the employee worked after the effective date of the *Mullins* settlement, they could assert a claim in this case.

As described below, the parties have worked together to avoid a third lawsuit for these claims. This is done in part by a settlement structure that allows class members to make claims against the settlement fund until the statute of limitations for their alleged claims expires. It is also accomplished because the defendants have altered their pay practices with respect to the rate paid in store and the amount of reimbursement paid for Defendants' drivers' miles driven.

### 5. Summary of Settlement Terms

The settlement agreement creates a settlement fund of up to $1,060,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. The fund is divided between two subclasses, described below. A class member may be part of both subclasses and eligible to receive an award from each subclass.

#### 5.1. Rule 23 Subclass

The "Rule 23 Subclass" consists of all class members who worked for Defendants at any time from February 8, 2018 until November 15, 2019 (*i.e.*, the time period *after* the period covered by the *Mullins* settlement) and covers the work performed during that period. $928,000 of the settlement is allocated to the Rule 23 Subclass.

After subtracting fees, expenses, and service awards, the remaining amount will be allocated to the Rule 23 Subclass members. This is the "Rule 23 Net Fund." Within 40 days of the Court's final approval of this settlement, the Claims Administrator will issue checks to all

Rule 23 Subclass members equal to their pro-rata share of the Rule 23 Net Fund, based on the amount of miles each member drove.

Presumably, not every check will be cashed or will reach the class members. To account for this, the Administrator will retain any unclaimed funds in a Qualified Settlement Fund. Until November 15, 2022, any Rule 23 Subclass member who did not opt-out of this settlement, and who did not cash their check (or receive it), can file a claim form and receive a reissued check.

At the end of the three-year period, any unclaimed funds will be used to make a *cy pres* award to the Domino's Pizza Partners Foundation. From their website:

> **Organization Overview**
> The Domino's Pizza Partners Foundation is a 501(c)(3) non-profit organization affiliated with and supported by Domino's Pizza and its team members. The Foundation was established in 1986, with the intent of helping team members in times of hardship and adversity. Assistance is provided in the form of financial help following on-the-job accidents, fire or natural disasters, medical emergencies or the death of an immediate family member.

https://dominosdfa.com/partners-foundation/. None of the unclaimed funds will revert to Defendants.

### 5.2.    FLSA Subclass[1]

The FLSA Subclass covers those class members who both (1) worked for Defendants prior to February 8, 2018, and (2) did not receive a check from the *Mullins* settlement. This Subclass consists of workers who have only FLSA claims remaining (for the pre-February 8, 2018 time period) because *Mullins* resolved their Ohio claims. $132,000 of the settlement is allocated to the FLSA Subclass.

---

[1] Delivery drivers can be part of both subclasses if they did not take part in *Mullins*, return their consent to join form, and continued working for Defendants after February 8, 2018.

After subtracting fees, expenses, and service awards, the remaining amount will be allocated to the FLSA Subclass members. This is the "FLSA Net Fund." Within 40 days of the Court's final approval of this settlement, the Claims Administrator will issue checks to all FLSA Subclass members who filed a valid claim form and release. The money will be divided based on the miles each FLSA Subclass member drove.

To the extent there are any excess funds, the Administrator will retain any unclaimed funds in a Qualified Settlement Fund. Until February 8, 2021, any FLSA Subclass member who did not opt-out of this settlement, and who did not cash their check (or receive it), can file a claim form and release to receive a share of the FLSA Net Fund. As above, these late filers will be entitled to a share based on their miles driven, but the amount will be limited to miles driven within three years of when the FLSA Subclass member files the claim form; *i.e.*, it will be reduced by the statute of limitations.

As above, if any funds remain after February 8, 2020, the funds will be used to make a *cy pres* award to the Domino's Pizza Partners Foundation. None of the unclaimed funds will revert to Defendants.

### 5.3.    Other Terms

As part of the settlement, Defendants agree not to oppose Plaintiff's counsel's anticipated request for a fee award of 33.33% of the common fund, expenses, and a $10,000 service award for the plaintiff.

## 6. The settlement provides for a fair resolution of disputed claims.

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729,

2012 WL 1945144, at *6. To do that, Plaintiff will describe the facts and law underlying his claims.

### 6.1.    Under-reimbursement Claim

It is undisputed that pizza companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff contends that Defendants have two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. Complaint, Doc. 1, ¶¶ 74-81. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019). In contrast, Defendants contend that they are permitted to approximate the drivers' expenses and pay that approximation. *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. July 8, 2015).

The effect of this legal dispute is two-fold. First, it affects the amount that Defendants must reimburse their drivers. Second, it affects how damages would be proved. Specifically, if the Court adopted Plaintiff's position, then Defendants would owe the difference between the IRS standard business mileage rate and what Defendants actually paid. But, if the Court adopted Defendants' position, then the parties would dispute what the proper reimbursement rate was (likely through expert testimony) and measure Defendants' compliance against whichever standard the Court or jury adopted.

Thus, the damages for this claim range somewhere from $0 to unpaid wages of approximately $1,600,000. This amount may be increased by FLSA liquidated damages or additional damages under Ohio law. *See* Ohio Const. Art. II, Sec. 34a.

### 6.2. "Dual Jobs" Claim

Plaintiff contends that he worked in both a tipped and non-tipped capacity. In other words, for some of his work time, he worked on the road, delivering pizzas and earning tips. Plaintiff contends that he also spent time working in the store, not generating tips. To the extent that Plaintiff worked in two occupations (i.e., "dual jobs"), he is entitled to be paid at full minimum wage for any non-tipped work. 29 C.F.R. 531.56(e). Defendants, however, contend that Plaintiff's in-store work was so related to his tipped work as to be part of the same occupation, thus entitling Defendants to pay a tipped wage rate for all of the work.

Assuming Plaintiff is correct, the damages for this claim are fairly limited because Defendants started to pay their employees a dual wage rate by April 14, 2017. Given that this time period is entirely covered by the *Mullins* settlement, the claims are limited to FLSA claims for those who did not participate in *Mullins*. Plaintiff calculates that maximum unpaid wages for this time period to be approximately $140,000 for all drivers.

### 6.3. Prompt Pay Act Claim

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15, for the period of time not covered by the *Mullins* settlement. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, at *5 (S.D. Ohio Sept. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same (obviously, Plaintiff may only recover unpaid wages once).

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. 4113.15(B). Here, there is likely a dispute, making Plaintiff's chance of succeeding on this portion of the claim less likely.

### 6.4.    Financial Considerations

Defendants' ability to pay a judgment weighs heavily in favor of the settlement. This is a 20-store Domino's franchise. That franchise has already paid approximately $1.4 million in 2019 to resolve similar claims. Based on Plaintiff's counsel's knowledge of this industry,[2] Plaintiff questions whether Defendants would have the capacity to engage in protracted, expensive litigation, and then pay an amount significantly higher than this settlement. Based on these considerations, Plaintiff believes that this settlement is the best result for all parties.

### 6.5.    Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (7) the public interest. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. Each factor is addressed below.

**Complexity, expense, and likely duration.** As the Court recently recognized, wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

---

[2] "In addition to the hours worked directly on this case, Plaintiff's counsel, having established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.,* No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019) (referring to the same counsel that represent plaintiff here).

**The stage of the proceedings and amount of discovery completed.** In a vacuum, this case is in its infancy. There are factors surrounding this case, however, that justify it settling at this "early" stage.

First, this case follows *Mullins*. Aside from the named plaintiff, the parties, counsel, and claims are all the same. Thus, the parties are well-positioned to evaluate settlement at this stage.

Second, this case is one of many "pizza delivery driver lawsuits" that Plaintiff's counsel and Defendants' counsel are fighting across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 1367663 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker*, 2019 WL 5725043 (motion for summary judgment); *Blose v. JARINC, Ltd.*, No. 1:18-cv-2184, Doc. 23, (D. Colo. Dec. 18, 2018) (order granting stipulation to send FLSA conditional certification notice). Thus, Plaintiff's counsel and Defendants' counsel are well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The 'pizza delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…").

Third, the parties exchanged the data and information relevant to evaluate the case's strengths and weaknesses. This data included reimbursement and mileage data.

In light of these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in pizza delivery driver cases. *See Mullins*, 2019 WL 275711, at *5. Defendants' counsel are likewise experts in this field.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included a private mediation with Frank Ray, a respected Ohio mediator. The case did not settle at the mediation, and, instead, the parties continued to negotiate. Ultimately, they reached the agreement now before the Court.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

### 6.6. The payment of attorneys' fees is reasonable.

Class Counsel will apply for one-third of the settlement fund as attorneys' fees ($380,000). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Brandenburg*, 2019 WL 6310376, at *5 (An award of one-third "is a normal fee amount in a wage and hour case."). "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D.

Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[3]

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1 §4(B). Thus, the Court does not need to decide the issue of attorneys' fees and costs now. In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which could affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

### 6.7. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D. at 374 (approving incentive awards to class representatives for their time

---

[3] *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 04-MDL-1638 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Docs. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

and expenses incurred pursing the litigation). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000. This amount is in line with identical amounts awarded in nearly identical cases. *See Arledge*, 2018 WL 5023950 at *6; *Mullins*, 2019 WL 275711 at *6 (S.D. Ohio Jan. 18, 2019); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019). Plaintiff spent time and effort working with his counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

**7. For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All current and former delivery drivers employed from March 26, 2016 until November 15, 2019 at the Southern Ohio Pizza Locations owned, operated, and/or controlled by the Franchisee Defendants.[4]

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all of the requirements for class certification are met. Defendants consent to class/collective action certification for settlement purposes.

---

[4] The Southern Ohio Pizza Locations are defined in the settlement agreement and includes 21 locations. *See* Exhibit 1 §1(B).

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not contain such a requirement. *See* Ohio Const. Art. II, Sec. 34a; R.C. 4111.03 and 4111.10. Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio Sept. 2014) (certifying a class for Ohio minimum wage claims). Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 7.1.    Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.[5]

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

### 7.1.1.  Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the

---

[5] Subject to the approval of the Court, and for settlement only, Defendants do not contest whether Plaintiff has satisfies the requirements for class certification pursuant to Rule 23.  Any class certification order entered in this Action pursuant to the Settlement Agreement, or otherwise shall not constitute a waiver or admission, in this or in any other proceeding, by Defendants of a finding or evidence that Plaintiff's claims, the claims of any person in the Settlement Class, or any Released Claims are appropriate for class treatment, or that any requirement for class certification is otherwise satisfied in this Action.  Defendants in no way waive their respective rights to challenge Plaintiff's allegations that a class may be certified in this Action, in the event that the Settlement Agreement does not become effective for any reason.

putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

Here, during the relevant time period, well over a thousand class members were employed at the Defendants' stores that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 7.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when"[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiff maintains that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by his claims: (1) how much

Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) the nature and extent of the drivers' in-store work, (4) whether Defendants can dispute whether they adequately compensated drivers, and (5) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when Defendants disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2018 WL 5800594 (S.D. Ohio November 6, 2018).

### 7.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill.1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally

considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev,* 269 F.R.D. at 640-41. Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so goes the claims of the class." *Id.* at 640. If Defendants' wage and hour practices violate Ohio law as to Plaintiff, they violate Ohio law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 7.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel?

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representative is ready, willing and able to fulfill his duties and has done so to date. Likewise, Plaintiff's counsel is well-qualified to handle this matter. Referring to Attorney Andrew Biller (and his firm, Markovits, Stock & DeMarco), the Court has found that Mr. Biller was "highly skilled" and has "prosecuted many wage-and-hour claims." *See Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015). Plaintiff's counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 7.2. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 7.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct to each subclass making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for pizza delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 7.2.2. A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case

makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 WL 2688276, *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

8. **The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See* Notice, generally. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires, that only those employees who file a claim form will participate in the settlement, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs potential class

members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by regular mail and, if email addresses are reasonably accessible, email.

**9. The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 160 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to submit claim forms, object to or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members must file a claim form (if an FLSA Subclass member), opt-out, or object, if they choose any of those options. |
| Up to 30 days after the notice period deadline | The Administrator will provide a report to the parties' counsel regarding the results of the notice process. |
| Within 60 days of the notice period deadline | Plaintiff will draft a motion for final approval. Defendants will have 14 days to review and propose edits, corrections, and comments. At the conclusion of this process, Plaintiff will file the motion for final approval. |
| Within 40 days of final approval | The Administrator will mail checks for the amounts due under the Agreement. |

## 10. Conclusion

Plaintiff asks the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel request for attorney's fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice and Claim Form to class members to provide an opportunity to join this settlement, or opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Andrew Biller*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

 /s/ Andrew Biller

Andrew Biller