IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Nathan Howard, *et al.*, | |
| *On Behalf Of Himself And Those Similarly Situated*, | Case No. 1:19-cv-222 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | Magistrate Judge Karen L. Litkovitz |
| Southern Ohio Pizza, Inc., *et al.*, | |
| Defendants. | |

**ORDER GRANTING FINAL SETTLEMENT APPROVAL**

Before the Court is Plaintiff Nathan Howard's Unopposed Motion for Final Settlement Approval. The Court, having reviewed Plaintiff's Motion and considered the arguments made during the Final Approval Hearing, hereby **GRANTS** Plaintiff's Motion.

**1. Background**

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores owned and operated by Defendants Southern Ohio Pizza, Inc., Louis Metro, and Karen Metro. *See* Complaint, Doc. 1. Plaintiff filed his Complaint on March 26, 2019. *Id.*

Plaintiff's primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. Plaintiff maintains that employers must reimburse their

employees for these costs. *See, e.g.,* 29 C.F.R. 531.35; *Yu G. Ke v. Saigon Grill, Inc.,* 595 F.Supp.2d 240, 258 (S.D.N.Y. Oct. 21, 2008) ("Indeed, there is substantial legal authority for the proposition that mechanisms for transportation—typically motor vehicles—can be tools of the trade." (citing cases)). Plaintiff maintains that employers of minimum wage delivery drivers must either (1) track and reimburse actual expenses or (2) reimburse at the IRS standard business mileage rate. DOL Field Operations Handbook § 30c15; *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146-TMR, 2019 WL 5725043, *7 (S.D. Ohio Nov. 5, 2019) (granting summary judgment to plaintiff delivery drivers). Plaintiff claims Defendants' practice violate the FLSA and Ohio wage and hour law: the Ohio Constitution, Article II, Section 34a, the Ohio Prompt Pay Act, and the Ohio Minimum Fair Wage Standards Act.

Defendants claim that they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles, have adequately reimbursed the delivery drivers for all of their expenses, and have at all times paid them properly. *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. July 8, 2015) (citing 29 C.F.R. § 778.217). Thus, Defendants claim that they have properly reimbursed the delivery drivers and paid all amounts and wages due. Defendants also deny that Plaintiff's claims are proper for class or collective action treatment, but have stipulated to the same solely for purposes of settlement.

On April 16, 2019, Plaintiff moved to conditionally certify this matter as a collective action. *See* Doc. 11. On June 11, 2019, before Plaintiff's Motion was decided, the parties submitted a Joint Motion to Stay this action to allow time for the parties to try to resolve the case. Doc. 24. In their Joint Motion, the parties' stipulated that if they were not able to settle the case, FLSA collective action notice would be distributed to putative opt in plaintiffs. *Id*. By Notation Order dated June

12, 2019, Judge Timothy S. Black granted the Joint Motion. The parties exchanged relevant mileage and delivery data necessary to assess the damages at issue in this case. They attended a mediation on October 10, 2019 with Mediator Frank Ray in Columbus, Ohio, but did not settle the case at mediation. Shortly thereafter, however, the parties reached terms on the Settlement Agreement now before this Court. Declaration of Andrew Kimble, ¶ 10.

Defendants have previously settled similar claims with an Ohio Rule 23 class of delivery drivers who worked between June 23, 2014 and February 7, 2018. *See Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *7 (S.D. Ohio Jan. 18, 2019) (granting final settlement approval). The individuals who returned a claim form in the *Mullins* settlement released all of their state and federal claims up until February 7, 2018; whereas those individuals who did not return a claim form in *Mullins* released their state law claims but not their federal FLSA claims. As a result, the parties' settlement of the present matter creates two subclasses: First, the FLSA Subclass is made up of those delivery drivers who worked for Defendants between March 26, 2016 and February 7, 2018 who *did not* return a claim form in the *Mullins* settlement, and therefore did not release their pre-February 7, 2018 FLSA claims. Second, the Rule 23 Subclass consists of all delivery drivers who worked for Defendants from February 8, 2018 until November 15, 2019.

Most recently, after the Court granted preliminary approval of the settlement, a Notice of the Settlement was sent to 813 members of the Rule 23 Subclass, and 544 putative members of the FLSA Subclass. Pursuant to the Settlement Agreement, the Rule 23 Subclass members would be included in the class and receive a portion of the settlement fund unless they opted out; whereas the putative members of the FLSA Subclass were required to submit a claim form (pursuant to 29 U.S.C. § 216(b)) in order to participate in the settlement. One hundred thirty-three (133) FLSA Subclass members returned valid claim forms.

**2. The Settlement Agreement**

The parties' Settlement Agreement creates a Settlement Fund of $1,060,000—$928,000 is allocated to the Rule 23 Subclass, and $132,000 is allocated to the FLSA Subclass. After deduction of attorneys' fees, advanced expenses, administrative costs, and service awards, the funds will be distributed to the class members based on the number of miles they drove for Defendants. Settlement Agreement, Doc. 33-1, ¶ 3. The FLSA Subclass members will each receive an average of $638.80. The Rule 23 Subclass members will each receive an average of $734.68.

By cashing their checks, the class members agree to the following release of claims:

> By cashing or negotiating this check, I agree to join the lawsuit *Howard v. Southern Ohio Pizza, Inc.* case number 1:19-cv-222 (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit relating to under-reimbursement of delivery expenses, "dual jobs" claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and under the federal Fair Labor Standards Act and parallel state and local wage and hour laws, including Ohio law.

Settlement Agreement, ¶ 5.E.

The Settlement Agreement also allows any Rule 23 Subclass member who does not timely cash his/her check to request the Claims Administrator reissue his or her check at any time until November 16, 2022. Settlement Agreement, ¶ 3.F. Further, the Settlement Agreement allows for any FLSA Subclass member who did not return a claim form during the notice period, but returns a claim form before February 9, 2021, and the statute of limitations on their FLSA claim has not run by the time they submit their claim form. Settlement Agreement, ¶ 3.G. Since the entire FLSA Subclass settlement fund has been claimed by individuals who have submitted timely opt in forms, if any late claims are made, Defendants will pay additional funds to cover their claims in

accordance with the Settlement Agreement. *Id*. The Court retains jurisdiction during the Reserve Fund Period and the Court will have continuing jurisdiction over the Action to enforce, interpret, and otherwise implement the settlement.

Pursuant to the terms of the Settlement Agreement, the parties hired a Claims Administrator to distribute the Notice of Settlement. Notice was sent to 1,294 class members. Of those, 544 were putative FLSA Subclass members who were required to return a claim form to be part of the FLSA Subclass, and 133 individuals returned their claim form. The Rule 23 class is made up of 813 individuals, all but one of whom will recover under the terms of the Settlement Agreement. Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials.

The Settlement Agreement provides for payment of attorneys' fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs of $13,986.60, and a service award to Plaintiff of $10,000.

**3. Analysis**

**a. Class Certification is Appropriate for Settlement Purposes.**

The Court hereby certifies the following hybrid class/collective for settlement purposes:

> All current and former delivery drivers employed from March 26, 2016 to November 15, 2019, at the Domino's Franchise stores owned, operated, and/or controlled by Southern Ohio Pizza, Inc.

The Rule 23 Subclass meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) (3) for purposes of settlement.[1] *See, e.g., Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *2 (S.D. Ohio Jan. 18, 2019) (approving a Rule 23 settlement class of Domino's drivers asserting similar claims); *Arledge v. Domino's*

[1] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

*Pizza, Inc*., No. 3:16-CV-386-WHR, 2018 WL 5023950, at *1–2 (S.D. Ohio Oct. 17, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *6 (S.D. Ohio Nov. 25, 2019); *Chrismon v. Meadow Greens Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *3 (E.D.N.C. July 7, 2020); *Young v. Rolling in the Dough, Inc.,* No. 1:17-cv-7825, 2020 WL 969616, *3 (N.D. Ill. Feb. 27, 2020).

Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 813 class members, and thus, joinder is impracticable. Doc. 33, Plaintiff's Unopposed Motion for Final Approval, PageID 245.

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2) because Plaintiff and the class members share common issues of fact and law. Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Plaintiff alleges that Defendants' reimbursement policy harmed all of the class members in the same way. Defendants do not contest that commonality is satisfied for settlement purposes.

For the same reason, Plaintiff satisfies the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims arise from the same factual and legal circumstances that form the basis of the class members claims. Doc. 33, Motion for Preliminary Approval, PageID 246. Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that he has interests antagonistic to or at odds with those of Class Members. *Cross v. Nat'l Trust Life Ins. Co*., 553 F.3d 1026, 1031 (6th Cir. 1977).

Plaintiff also satisfies Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, and

took improper deductions from wages—predominate over any factual or legal variations among Class Members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC as class counsel because they meet all of the requirements of Rule 23(g). Plaintiff's Counsel are well-versed in pizza delivery driver litigation. Referring to Biller & Kimble, LLC's lawyers, Judge Walter H. Rice held "[t]he Court is familiar with Class Counsel's work in this and other cases like it. * * * The Court agrees that Class Counsel's work in this area is exemplary…" *Brandenburg,* 2019 WL 6310376, *6.

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA. Plaintiff's Unopposed Motion for Final Approval, Exhibit 2.

The Court also finds that all FLSA opt in Plaintiffs are properly joined to the case, and that the case is properly certified as a collective action pursuant to Section 216(b) of the FLSA.

The Court **GRANTS** certification of a Rule 23 and FLSA Section 216(b) settlement class of Defendants' delivery drivers employed from March 26, 2016 to November 15, 2019, at the Domino's Franchise stores owned, operated, and/or controlled by Defendants.

**b. The parties' settlement is fair, reasonable, and adequate.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e); *Mullins*, 2019 WL 275711, *2. There is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless,* 609 F.3d 589, 594-95 (3d Cir. 2010); *see also* Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

Courts in the Sixth Circuit evaluate the following factors in determining whether to approve a class action settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Mullins*, 2019 WL 275711, *2 (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

**i. The Risk of Fraud or Collusion**

First, the evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides, including an all-day mediation. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Mullins*, 2019 WL 275711, *2 (quoting *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)). This is also the second lawsuit prosecuted by Plaintiff's Counsel against these particular Defendants. Nothing before the Court suggests that the Settlement is the result of fraud or collusion.

**ii. The Complexity, Expense, and Likely Duration**

Second, wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, *5 (S.D. Ohio Oct. 17, 2018) (concluding a case raising a similar delivery driver reimbursement claim "involved complicated issues of fact and law."). Defendants dispute liability and raise a number of defenses. The parties would have had to proceed through class certification, summary judgment, and possibly a trial before a judgment would be entered. The settlement amount is not the full amount that the delivery drivers could have received at trial, but the settlement eliminates

the possibility that the delivery drivers might receive nothing at trial. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Hupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969). This factor supports approval of the settlement.

**iii. The Amount of Discovery Engaged in by the Parties**

This is the second lawsuit of its kind filed by Plaintiff's Counsel on behalf of delivery drivers at Southern Ohio Pizza, Inc. Therefore, this settlement is first informed by the prior litigation between the parties on the same issue. In addition, the parties exchanged substantial information relating to the miles driven and reimbursements paid during the time periods in question, which allowed the parties to accurately calculate damages and negotiate a settlement. The Court finds this exchange of information was sufficient to inform the settlement negotiations in this case. *See Mullins*, 2019 WL 275711, *2.

**iv. The Likelihood of Success on the Merits**

Success was not certain for the delivery drivers on either their under-reimbursement claim or their tip credit notice/dual jobs claims. There were a number of factual and legal disputes that would have to be decided by the Court. Depending on the Court's decisions, the delivery drivers could have been awarded more or less than what they will receive under the terms of the settlement. This factor supports approval of the settlement.

**v. The Opinions of Class Counsel and Class Representatives**

The class representative approves of the settlement. Class Counsel also believes the settlement is fair, adequate, and reasonable. Counsel are uniquely experienced in pizza delivery driver litigation, having litigated similar cases across the country. This factor supports approval of the settlement.

**vi. The Reaction of Absent Class Members**

The class members reaction to the settlement has been positive. The class members have now been notified of the settlement. None of the class members of objected, and only a single class member has opted out. Of the 544 individuals who had an opportunity to opt in for their FLSA claims, 133 individuals did opt in.

**vii. The Public Interest**

Public policy favors settlement of class action lawsuits. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). This case is no exception. The settlement provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

All of these factors support approval of the settlement. The Court therefore **APPROVES** the parties' Settlement Agreement as fair, adequate, and reasonable.

**c. Fees, Expenses, and Service Awards**

Plaintiff's Counsel asks the Court to approve an attorneys' fees award of one-third of the Settlement Fund, *i.e.*, $158,333. Defendants do not object to the requested fee award. In granting preliminary approval, the Court provisionally approved Plaintiff's Counsel's request for fees and costs, and explained that the fees and costs would be finally approved after taking into account any objections. Doc. 94, ¶ 9. The Notice period is closed, and no class members objected to the settlement or the requested fees and costs.

Many courts in the Sixth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable. *See, e.g., Brandenburg,* 2019 WL 6310376, *6 ; *Osman v. Grube,*

*Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018); *Thorn v. Bob Evans Farm*, No. 2:12-cv-00768, 2016 WL 8140448, at *2 (S.D. Ohio Feb. 26, 2016) (awarding 32.92% of common fund); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (N.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").

The Court finds this request for attorneys' fees to be fair, adequate, and reasonable, and therefore **GRANTS** Plaintiff's Counsel's request for attorneys' fees in the amount of $353,333.

The Court also **GRANTS** Plaintiff's Counsel's request for reimbursement of litigation costs in the amount of $422, and **APPROVES** the claims administration costs of $13,986.60 as fair, adequate, and reasonable.

**i. Service Award**

The Court also approves the request for a service award in the amount of $10,000 to Nathan Howard. Mr. Howard provided valuable insight to his Counsel throughout the case, and his efforts resulted in payment to nearly 1,000 minimum wage pizza delivery drivers. The requested service award is reasonable. *See, e.g., Mullins*, 2019 WL 275711, *6 (approving $10,000 service award in pizza delivery driver case); *Arledge*, 2018 WL 5023950, *6 (approving $10,000 service award in pizza delivery driver case); *Brandenburg*, 2019 WL 6310376, *7 (approving $10,000 service award in pizza delivery driver case); *Young*, 2020 WL 969616, *7; *Chrismon*, 2020 WL 3790866, *5. Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000.

**4. Conclusion**

Having reviewed Plaintiff's unopposed motion for final approval, the Court **GRANTS** the motion.

This action is hereby **DISMISSED** with prejudice, with the Court to retain jurisdiction to to enforce, interpret, and otherwise implement the settlement. The Parties are ordered to carry out the Settlement Agreement according to its terms.

**IT IS SO ORDERED**, this 20th day of August, 2020.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: ______________________________
JUDGE MATTHEW W. McFARLAND